**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4216**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FERNANDO SANTANA,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Jerome B. Friedman, District Judge. (2:06-cr-00172-JBF-TEM-3)

Argued: September 30, 2009                  Decided: November 23, 2009

Before MOTZ and DUNCAN, Circuit Judges, and Cameron McGowan CURRIE, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James Brian Donnelly, PRICE, PERKINS, LARKEN & DONNELLY, Virginia Beach, Virginia, for Appellant. Laura Marie Everhart, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Fernando Santana appeals his conviction and sentence for conspiracy to possess and distribute methamphetamine in violation of 21 U.S.C. § 846, possession and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), conspiracy to launder money in violation of 18 U.S.C. § 1956(h), money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), possession with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Santana challenges the district court's order denying his motion to dismiss a superseding indictment, its ruling permitting the introduction of certain business records by the government, its supplemental instruction to the jury regarding a mistake contained in the jury verdict form, and its failure to instruct the jury on the elements of the crime of attempt. For the reasons that follow, we affirm.

I.

In December 2006 Santana was indicted on counts of money laundering, conspiracy to possess and distribute methamphetamine, possession and distribution of methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon. The case went to

2

trial in May 2007. During the trial, witnesses mentioned Santana's role in uncharged crimes. The witnesses referenced Santana's possession of cocaine with intent to distribute and his possession of a firearm with an altered serial number. As a result, Santana moved for a mistrial and the district court granted the motion. In June 2007 the government filed a superseding indictment, which included additional charges related to the uncharged crimes referenced by the witnesses at trial. In August 2007 Santana filed a motion to dismiss the superseding indictment based on prosecutorial vindictiveness. The district court denied that motion.

The case proceeded to trial in September 2007. At trial, the government sought to introduce, through the testimony of an Internal Revenue Service ("IRS") Special Agent, a number of summary charts pertaining to records of money transfers. Santana objected, arguing that the IRS Special Agent was not the appropriate person to authenticate those records. The court overruled Santana's objection, finding that the records had been previously authenticated as business records and that the agent was qualified to testify as to their significance.

At the trial's conclusion, the court mistakenly instructed the jury that Count 11 of the indictment charged Santana with possession of methamphetamine. In fact, Count 11 charged attempt to possess methamphetamine. The jury verdict form

3

reflected that same mistake. During deliberations, the jury asked the court about the inconsistency between the indictment and the instructions. The jury's question read, in part: "[I]s the charge possess or attempt to possess? . . . [I]f attempted, as in the indictment, should wording of the jury form be changed to 'attempt,' or are we reading too much into this?" J.A. 1136. Santana argued that allowing the jury to amend the verdict form would constitute a constructive amendment to the indictment. The court rejected Santana's argument. It instructed the jury to follow the indictment to determine what the charge was and stated that they could amend the verdict form to reflect that Count 11 charged attempt if they wished. Santana again objected to the court's action permitting the jury to correct the form.

The jury found Santana not guilty on two counts of possession with intent to distribute cocaine and methamphetamine and found him guilty on twelve counts of conspiracy to distribute and possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, attempted possession with intent to distribute methamphetamine, distribution of methamphetamine, conspiracy to launder money, money laundering, and possession of a firearm with an obliterated serial number. On January 18, 2008, Santana was sentenced to 252 months' imprisonment. This appeal followed.

II.

Santana first argues that the district court erred in denying his motion to dismiss the superseding indictment because the government did not present sufficient evidence to rebut the presumption of vindictiveness that he had established. Second, he contends that the district court erred in admitting the money-transfer business records because they were not previously authenticated and because the IRS Special Agent was not the appropriate person to authenticate them. Third, he asserts that the district court erred in allowing the jury to correct the jury verdict form because the correction constituted a constructive amendment to the indictment. Finally, he posits that the court erred in not instructing the jury on the elements of the crime of attempt. We address each of Santana's contentions in turn.

A.

When ruling on Santana's motion to dismiss the superseding indictment, the district court found that, "although the defendant . . . offered evidence of circumstances from which a vindictive motive may be presumed, the government . . . offered objective information justifying its actions." J.A. 249. A trial court's finding on prosecutorial vindictiveness is

5

reviewed for abuse of discretion. <u>United States v. Fiel</u>, 35 F.3d 997, 1007 (4th Cir. 1994).

Contrary to Santana's position, we find that the district court erred in holding that he adequately raised a presumption of vindictiveness in the first place.[1]  In <u>Fiel</u>, we found that "[w]here the change in the indictment is prompted 'by newly discovered evidence supporting the imposition of additional counts . . . a presumption of vindictiveness is not warranted.'" <u>Id.</u> at 1008 (quoting <u>United States v. Bryant</u>, 770 F.2d 1283, 1287 (5th Cir. 1985)) (ellipses in original).  Here, the new charges in the indictment were prompted by new evidence regarding Santana's drug-related activities that the government obtained from Santana's codefendants and other witnesses after the initial indictment was issued.  Therefore, the presumption of vindictiveness never should have attached and the district court should have denied the motion on that ground.  However, the error is harmless because the district court reached the correct result in denying the motion.

---

[1] To raise a presumption of vindictiveness "a defendant must show that the circumstances 'pose a realistic likelihood of 'vindictiveness.''"  <u>United States v. Wilson</u>, 262 F.3d 305, 314 (4th Cir. 2001) (quoting <u>Blackledge v. Perry</u>, 417 U.S. 21, 27 (1974)).  The facts that the court found to support the presumption were that the superseding indictment was issued after Santana successfully moved for a mistrial over the government's objection and that the additional charges included in the superseding indictment increased Santana's potential sentence.

Furthermore, even if the presumption had attached, the government clearly presented sufficient evidence to rebut it. The Fiel court explained the presumption and potential rebuttal as follows:

> In certain cases where detrimental action was taken against the defendant by the government immediately following her exercise of a right, the Court presumes an improper vindictive motive on the part of the prosecutor. . . . Where the presumption arises, it may be rebutted by objective information justifying the detrimental action.

Id. at 1007 (internal citations omitted). Santana argues that the government had to present actual evidence, such as an affidavit, justifying the government's actions. Yet, as the Supreme Court has explained, "attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." Holloway v. Arkansas, 435 U.S. 475, 486 (1978) (citation and internal quotation marks omitted). In addition, Fiel clearly specifies that "objective information" suffices to rebut the vindictiveness presumption. 35 F.3d at 1007. The Fiel court made no mention of a requirement that the information take any specific form. Here, the government presented objective information that it had received new evidence justifying the new charges and that the only reason it had not chosen to file the superseding indictment previously was that it had wanted to

7

preserve the original trial date.  This evidence was sufficient to overcome any presumption that might have arisen.

Any presumption here would have also been rebutted by the fact that the government added the charges in order to cure the defects that caused the mistrial.  Where "[i]n advance of the new trial, the United States took the opportunity to 'cure perceived deficiencies in the original indictment' that contributed to the mistrial," such "wholly neutral, and rational, reason for the additional charges defeats the presumption of vindictiveness."  United States v. Hill, 93 F. App'x 540, 546 (4th Cir. April 2, 2004) (quoting United States v. Brown, 298 F.3d 392, 406 (5th Cir. 2002)).  During the hearing on Santana's motion to dismiss, the government indicated that the decision to file a superseding indictment was intended to address "the situation where witnesses were talking about things that were not charged in the original indictment," which ultimately led to the mistrial.  J.A. 226.  The government's rationale for its decision was sufficient to rebut any presumption of vindictiveness.

Accordingly, the district court did not abuse its discretion in denying Santana's motion to dismiss the superseding indictment.

B.

We now turn to the district court's decision to admit the government's evidence of business records pertaining to money transfers. We "review decisions to admit evidence for abuse of discretion." United States v. Forrest, 429 F.3d 73, 79 (4th Cir. 2005). Santana argues that the records were hearsay and were not pre-authenticated because they did not fit within the confines of Federal Rules of Evidence 803(6) and 902(11).

Rule 803(6) states that business records are not excluded under the hearsay rule if they are accompanied by a certification of their custodian or other qualified person asserting (1) that the records were "made at or near the time by, or from information transmitted by, a person with knowledge"; (2) that they were "kept in the course of a regularly conducted business activity"; and (3) that "it was the regular practice of that business activity to make [them]." Prior to the introduction of the charts summarizing the business records, the government introduced certificates of authenticity from the original custodians of the records that met each of these requirements. Therefore, the government complied with the requirements of Rule 803(6), thereby excepting the charts from the hearsay limitation.

Likewise, we find the government complied with the requirements of Rule 902(11). The rule states that records need

9

not be authenticated at trial if they are accompanied "by a written declaration of [their] custodian or other qualified person" attesting that the records meet each of the requirements of Rule 803(6). Fed. R. Evid. 902(11). To meet Rule 902(11)'s authentication requirement, the proponent of the evidence must "provide written notice . . . to all adverse parties" of his intention to offer the record into evidence under that rule and must "make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them." Id. Santana argues that the government failed to comply with this requirement because "[t]he record does not disclose that notice pursuant to Rule 902(11) was provided [to] defense counsel prior to the trial on the superseding indictment." Appellant's Br. at 19.

Contrary to Santana's assertion, the record indicates that the government did comply with the disclosure requirements of Rule 902(11). Santana's counsel admitted that the intention to introduce the records was given in advance of the second trial, but that he did not file a motion in limine because he "assum[ed]" the government was "going to prove it the way [he] thought it] should be proved." J.A. 831. Therefore, the record clearly shows that Santana knew the documents would be introduced at the second trial. Santana also admits in his

brief that "notice pursuant to Rule 902(11) had been provided prior to the first trial." Appellant's Br. at 19. There is therefore no question that Santana had sufficient notice of the government's intention to introduce the evidence and a fair opportunity to challenge it as required by Rule 902(11). Accordingly, we find that the government complied with Rule 902(11).

Because the business records were excepted from the hearsay rule under Rule 803(6) and were pre-authenticated under Rule 902(11), the district court did not abuse its discretion in admitting the records and the related summary charts.[2]

## C.

We consider next Santana's argument that the court's supplemental instruction to the jury designed to correct the error in the jury verdict form was a constructive amendment to the indictment. "It is well established that the necessity, extent and character of any supplemental instructions to the jury are matters within the sound discretion of the district court" and are therefore reviewable only for abuse of

---

[2] Santana also contends that the court erred in admitting the records because the IRS Special Agent was not qualified to authenticate them at trial. Because the government did not need to authenticate the records at trial, this argument is unavailing.

11

discretion.  United States v. Horton, 921 F.2d 540, 546 (4th Cir. 1990).  "[I]n responding to a jury's request for clarification on a charge, the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice."  United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995).

Here, the court's decision to clear up confusion by directing the jury to look to the indictment for an accurate description of the charge was warranted.  In so doing, the court correctly directed the jury to do exactly what they were supposed to do, which was to decide whether the defendant was guilty of the crimes with which he was charged in the indictment.  The court's statement that the jury could amend the form to correct the mistake was similarly reasonable, for the change made the words on the form reflect the charge in the indictment.  Therefore, the district court did not err in giving this supplemental instruction.

Santana asserts that the supplemental instruction created prejudice because it constituted a constructive amendment to the indictment.  A constructive amendment, also known as a fatal variance, occurs when "'the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'"  United States v. Malloy, 568 F.3d 166, 177-78

12

(4th Cir. 2009) (quoting United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999)). When "the district court, through its instructions to the jury . . . broadens the bases for conviction beyond those charged in the indictment . . . a fatal variance . . . occurs." Id. at 178.

This court has emphasized that, "'[a] mere variance [to the indictment] does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense.'" Id. (quoting Randall, 171 F.3d at 203).

Here, Santana has failed to show actual prejudice. The court's supplemental instruction amended the erroneous original instruction by explaining to the jury that its role was to find whether defendant was guilty or not guilty "based on the indictment," which clearly describes Count 11 as attempt to possess. J.A. 1139. Following the court's explanation of the error, the jury changed the jury verdict form to describe Count 11 as attempt to possess. Therefore, the jury found Santana guilty of exactly the same crime that he was charged with in the indictment. Accordingly, under any standard, Santana cannot be said to have suffered prejudice because, in spite of the court's alleged error, he was not "convicted of a crime other than that charged in the indictment." Malloy, 568 F.3d at 178.

13

Therefore, the district court's supplemental instruction regarding the error in the jury verdict form did not constitute an abuse of discretion.

D.

Finally, we turn to Santana's assertion that, when allowing the jury to amend the verdict form, the court erred in failing to discuss the elements of the crime of attempt. The question of whether the trial court properly instructed the jury on the elements of a charged crime is a legal question that we ordinarily review de novo. United States v. Rahman, 83 F.3d 89, 92 (4th Cir. 1996). However, where the defendant fails to object to the omission of elements of the crime in the jury instructions at trial, "we review solely for plain error." United States v. McLamb, 985 F.2d 1284, 1293 (4th Cir. 1993). Here, Santana admits that he did not object to the court's original jury instructions. Furthermore, although he objected to the court's answer to the jury question, his objection was that the court should not allow the jury to add the word "attempt" to the jury verdict form. At no point during the trial did Santana raise his concern that the court had failed to explain the elements of the crime of attempt to possess methamphetamine. Therefore, because Santana did not raise the

14

alleged omission at trial, we review the court's omission of instructions on attempt for plain error. Id. at 1293.

The Supreme Court explained in United States v. Olano that, in order for an appellate court to find a plain error, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" 507 U.S. 725, 732 (1993) (quoting Fed. R. Crim. Pro. 52(b)). The Olano Court emphasized that, even when a plain error affects substantial rights, "the decision to correct the forfeited error [is] within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quoting United States v. Young, 470 U.S. 1, 15 (1985)). On plain-error review, "'it is the defendant rather than the Government who bears the burden of persuasion.'" United States v. Hastings, 134 F.3d 235, 240 (4th Cir. 1998) (quoting Olano, 507 U.S. at 734).

We find that, even assuming that there was an error, which was plain, and which affected substantial rights, we need not correct it because it does not seriously affect the fairness or reputation of these legal proceedings. The Supreme Court has indicated that, where the evidence presented at trial overwhelmingly supports the jury's conclusion that the defendant committed an element of an offense, and where that evidence is

essentially uncontroverted, a court need not correct the district court's failure to submit a required element to the jury in its instruction.  See Johnson v. United States, 520 U.S. 461, 470 (1997).  We have similarly held that we will not correct an error where, "even if the proper instruction had been given, [the defendant's] conviction was inevitable" because the evidence "permitt[ed] no other conclusion" but that the element missing from the jury instructions was proven.  United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996).  In Cedelle, we further explained that we will not notice an error in a failure to instruct on an element where, "viewing the record as a whole, the proceedings resulted in a fair and reliable determination of [the defendant's] guilt."  Id.

Here, the evidence at trial overwhelmingly showed that Santana was responsible for the charged attempt to obtain methamphetamine.  The relevant count, Count 11, charged Santana with attempt to possess with intent to distribute approximately 209 grams of methamphetamine on February 11, 2005.  We have held that the elements of attempt are "(1) culpable intent to commit the crime charged and (2) a substantial step towards the completion of the crime that strongly corroborates that intent."  United States v. Neal, 78 F.3d 901, 906 (4th Cir. 1996).  At trial, the government presented evidence from Santana's coconspirators, Octavio Chavez and Martin Fernandez, who

16

testified that on February 11, 2005, they were arrested while trying to obtain a package containing approximately nine ounces of methamphetamine, which was to be distributed among the four coconspirators--Santana, Chavez, Fernandez, and Bryan Wilson. The evidence also showed that Santana had helped to pay for methamphetamine orders made by Chavez and Fernandez on behalf of the group.

The car trip described by Chavez and Fernandez was the only incident that the government presented that related to any attempt to obtain methamphetamine on February 11, 2005. Therefore, in finding Santana guilty of an attempt to obtain methamphetamine on that date, the jury necessarily found that the government had proven that the trip had occurred and that Santana was liable for it as part of the conspiracy.[3] The trip itself proved both intent to obtain methamphetamine and a substantial step towards that goal that strongly corroborates the intent. It necessarily follows that, had the jury been instructed about the intent and substantial step elements of the

---

[3] The jury also found, pursuant to a different count, that Santana was part of a conspiracy with Chavez and Fernandez to obtain methamphetamine. This court has held that a defendant's "conspiracy conviction makes him liable for all substantive offenses of his coconspirator[s] that are both reasonably foreseeable and in furtherance of the conspiracy." United States v. Bonetti, 277 F.3d 441, 447 (4th Cir. 2002). Accordingly, Santana was necessarily responsible for any attempt by his coconspirators to obtain methamphetamine in furtherance of the conspiracy.

crime of attempt, it would have found that the government proved those elements. We therefore find, as we did in Cedelle, that "even if the proper instruction had been given, [the defendant's] conviction was inevitable." Cedelle, 89 F.3d at 186. We further find that, "viewing the record as a whole, the proceedings resulted in a fair and reliable determination of [the defendant's] guilt."[4] Id. Accordingly, because the error does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings," we will not exercise our discretion to correct it. Olano, 507 U.S. at 732.

## III.

For the reasons set forth above, we affirm Santana's conviction and sentence.

AFFIRMED

---

[4] With regard to the fairness consideration, we also note that at trial, when the question arose regarding the correction to the jury verdict form, the court heard both sides on how to address the issue. Santana never suggested that an instruction be given on the elements of the crime of attempt. Therefore, if we were to overturn the conviction based on this error, Santana would unfairly benefit from an error that he helped create.